The People of the State of Illinois, Plaintiff-Appellee, v. LeRoy Edwards, Defendant-Appellant.

Gen. No. 51,251.

First District, Fourth Division.

July 17, 1968.

Jack L. Parrino, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Oliver D. Ferguson, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken by the defendant, LeRoy Edwards, from a judgment of conviction of the offense of burglary entered March 8, 1965. The defendant pleaded not guilty; the case was tried with a jury which returned a verdict of guilty of the offense charged. The court entered a judgment on the verdict and sentenced the defendant to the Illinois State Penitentiary for not less than five years nor more than eight.

On September 15, 1963, Ann Speight, the complainant, lived alone in a two-room apartment at 429 East 46th Street, Chicago, Illinois. At approximately 6:00 o'clock that morning she was awakened by a noise in her kitchen; she looked from her bed in the combination living room-bedroom and saw a shadow of a man in the kitchen with his hands in her purse; she said she could distinguish his features in a mirror which reflected into the kitchen. She ran into the front hall and yelled, rousing her neighbor; while knocking at her neighbor's door she saw the man come into her bedroom; she was in the hall about 20 feet from him, and stood there looking at him for two or three minutes. She stated that the man then turned back into the kitchen and went out through the window. She identified LeRoy Edwards, defendant, as the man she had seen in her apartment.

The building in question has four stories and about 24 apartments. The windows in complainant's apartment led to a fire escape. She stated that the window through which the defendant left was locked when she went to bed, and that after he had gone she observed that the window lock was broken; at the same time she saw two iron bars lying on the fire escape. She stated that nothing had been taken from her purse.

Police Officer Victor Bell testified that on September 15, 1963, in answer to a radio call at about 6:45 a. m., he

went to 429 East 46th Street to investigate a burglary. He went to the second floor where he talked with the complaining witness and a Mrs. Lions; he then went to the basement apartment in search of a man who lived there and who answered the description of the burglar. He examined the kitchen window of complainant's apartment and found that it had been pried open from the outside and the safety catch broken; he found two bars lying on the fire escape.

The complainant testified that on September 18, 1963, she saw the defendant in the backyard of the building where she lived, and that she told her landlady. She stated that the next day Officer Roy Robinson talked with her and the landlady and showed them some pictures, two of which the complainant recognized as the defendant.

Officer Robinson testified that on September 20, 1963, he talked to the complainant and Mrs. Lions; that he later returned with pictures which he showed to them, and that the complainant identified the defendant. He stated that he subsequently made several trips to the basement apartment in the building for the purpose of apprehending the defendant, but was never able to locate him there.

The complaining witness stated that she went to the Wabash Avenue Police Station on September 28, 1963, accompanied by Officer Robinson, where in a lineup with three other men she saw the man she had seen in her apartment, and identified him as the defendant. Officer Robinson also testified that the complainant had identified the defendant in a lineup held at the Wabash Avenue station.

Officer Leroy Brooks testified that on September 28, 1963, he arrested the defendant at about 3:00 a. m. in the basement apartment at 429 East 46th Street, and that the defendant was discovered in a closet under some clothing.

131

The defendant did not take the stand. The defense consisted of four witnesses: Travis Edwards, John Edwards, John Mahoney, and Roy Robinson (Officer Robinson was also called as a witness for the State). Travis Edwards, wife of the defendant, testified that during the early morning hours of September 15, 1963, the defendant was in their basement apartment at 429 East 46th Street; that they had guests who played cards until 4:30 a. m.; that she had an argument with her husband and went to bed at 6:30; that her husband did not leave the apartment at any time that morning. She said there were about 22 people in the apartment playing cards and that if Officer Bell knocked at her door, as he had testified, she did not hear him. She also stated that from the date of the card party until the time of her husband's arrest, no police officer had come to the apartment looking for him.

The testimony of Officer Robinson as a defense witness does not appear in the abstract and consequently, we will disregard it.

██ The defendant first argues that reversible error was committed inasmuch as when Officer Bell was asked "Now after talking with the women, after talking with Mrs. Lions, did you go anywhere else in that building?" he answered, "Yes, there was supposed to be a fellow who committed burglary that answered the description that lived in the building, and we went there to look for him, and was unable to gain entrance." The State's Attorney then asked the officer to state where he looked for the defendant and he said he looked in the basement apartment at 429 East 46th Street; that he tried to gain entrance to the apartment but was unable to do so. The defendant argues that Officer Bell's statement, ". . . there was supposed to be a fellow who committed burglary that answered the description that lived in the building, . . ." brought before the jury an unrelated

offense which was highly improper. Of course, it is the rule that to refer to the commission of other crimes of the defendant before the jury is improper; however, we must consider that the statement made by the police officer as it appears in the record was not necessarily an accurate account of what the officer said, since the transcript in this case is probably one of the worst we have had before us in this court. The complaining witness' couch is mentioned several times and is consistently referred to in the record as "coach"; there are many typographical errors, and in mentioning the dates the year is sometimes shown as 1963 and sometimes as 1964, when it is apparently meant to be 1963. The alleged testimony of the officer was not referred to in the argument of the defendant at the trial, nor was any objection made to it at the time. Considering the entire record, the officer's statement was probably not accurately reported; and in any case, it was not so prejudicial as to require reversal.

The defendant further argues that the following argument by the State's Attorney to the jury was improper:

> Do the guilty resort to lying to a jury? What do you gain by it? You are as smart as we are, probably smarter, undoubtedly smarter. How do they try to persuade you? By the truth? There was no burglary. Twenty-two whist players. Twelve cans of beer. And we didn't know a policeman came. That was the defendant's wife's testimony. She has an interest, and I suppose that sort of excerpts the perjury rule, and not going to try the wife, she has an interest in the case.
>
> But she testified that no policeman came on the morning of September 15th and Officer Robinson never came from the 15th to the 28th. Didn't she? Well, Officer Robinson testified he was there several

133

times. Officer Bell testified he went down, knocked on the door the morning of the burglary.

■ The defendant further argues that the State's Attorney said, "Our American system of juries is presently on its way to trying the victims of crimes rather than the perpetrators of crimes. And it is about time that it stopped. And the easiest and best way to stop it is to by your verdict tell them." In the defendant's brief he argues that the reference by the State's Attorney to the defendant as the perpetrator is reversible error; however, the defendant does not point out that prior to the last remark of the State's Attorney, defense counsel in his argument had said:

> She said she didn't know him and she had never seen him before. She said she could identify him positively because he stood there for two minutes and looked right at me. Is this true or did she know him before? She is a single woman, maybe she did know him before. But she said she didn't, but somebody sent Officer Victor Bell to Leroy Edwards apartment right after a complaint was made. Who sent Officer Bell there? I don't know and from the evidence you don't know. Just think about it. Nobody told you how he happened to go there that morning. Did Mrs. Speight know Leroy Edwards before? Did Leroy Edwards break into her apartment? They said they found a burglary tool outside, but nobody ever saw it in this man's hands.

The innuendo contained in the argument is an attack on the morality of the complaining witness. The prosecutor answered by making the statement that we try the victims rather than the perpetrators of crime. Under the circumstances, and in answer to the insinuation of counsel for the defendant, we can find no fault in the argument of the State.

134

■ It has been repeatedly held that whenever the argument of defense counsel invites or provokes a response on the part of a prosecutor the defendant cannot complain he has been prejudiced by such response. People v. Lewis, 25 Ill2d 442, 185 NE2d 254, citing People v. Wheeler, 5 Ill2d 474, 126 NE2d 228.

■ The defendant further contends that in his closing argument the defense counsel had stated, "Did you hear anyone say the defendant at any time admitted that he had done this? No. The defendant has never admitted this crime." The State's Attorney objected for the reason ". . . no evidence to that. No such evidence in this record." In answer to the objection the court said the jury had heard the witnesses. The State's Attorney's remark could not reasonably be construed by anyone as an improper comment on defendant's failure to testify.

■■ The complaining witness' identification of the defendant was sufficient and was based upon sufficient observation. She testified that she had seen the reflection of the defendant in the mirror adjacent to the door to the kitchen. She further testified that when she was in the hall, screaming and knocking at her neighbor's door, the man came into her bedroom and she looked at him for two or three minutes. When she observed his reflection in the mirror while he was in the kitchen he had his hands in her purse. This evidence is sufficient to prove intent to commit burglary.

■ A careful examination of the record convinces us that the defendant was proved guilty beyond a reasonable doubt. In People v. Setzke, 22 Ill2d 582, 177 NE2d 168, the court said at page 586:

> "There is no obligation on a trial court to believe alibi testimony over positive identification of the accused, even though the alibi testimony may be given by a greater number of witnesses. [Citing cases.]"

135

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.