The People of the State of Illinois, Plaintiff-Appellee, *v.* Ismael Correa Reyes, Defendant-Appellant.

(No. 53613;

First District—December 17, 1970.

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen, Ronald P. Katz, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Joseph Romano, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Ismael Correa Reyes, was charged with the crime of murder. After a jury trial, he was found guilty of that crime and sentenced for a term of 20 to 40 years. Defendant appeals, contending that he was not proved guilty beyond a reasonable doubt; that portions of the prosecutor's closing argument were so improper and prejudicial as to require reversal; and that the admission of certain hearsay evidence was a denial of defendant's constitutional right to confront witnesses.

Three other men, Richard Chumbley, Gerald Hargrove and Jack Hitchcock, were also indicted for the same crime. Chumbley was tried with defendant, and was found not guilty of the charge by the jury. The record does not reveal the disposition of the charges against Hargrove and Hitchcok.

Gerald Hargrove, 17 years of age, testified for the State that he, Chumbley, Hitchcock and defendant were riding in an automobile operated by Hitchcock on the evening of January 20, 1967. Earlier they had been riding in defendant's auto, but it had become inoperative. All four of them were drinking whiskey and beer. Eearlier in the evening two girls had been riding with them. During the evening, defendant had fired shots at an empty bottle and also at street lights. Later defendant commented on his need for money to pay for the necessary repairs to his auto. They then observed a man walking down the street carrying a bottle. Hargrove testified that defendant instructed Hitchcock to stop the auto, and said, "I'm going to get that guy." Defendant and Chumbley left the car, and Hargrove, seated in the back seat, observed them following the man down the street. Hargrove then heard three gun shots. Defendant returned to the car, having been gone about five minutes, and

stated that he had asked the man for his wallet. When the victim refused and moved quickly, defendant shot him. The victim ran, and defendant fired two more shots at him.

On cross-examination, Hargrove testified that he had drunk four or five cans of beer and then some whiskey. He was "high" from drinking, but was not intoxicated. While he generally fell asleep after drinking, he did not fall asleep or pass out on this night. He did not know whether defendant was drunk at the time. Two investigators attempted to talk to him about the case, but he refused to talk to them.

Russell Potts testified for the State that on the evening of January 21, 1967, he had a conversation with defendant in which the latter asked to borrow money because he had to leave town. A short time later, defendant told Potts that he had to leave town because he had shot a man. On the following morning, Hitchcock and defendant had a conversation with Potts. Hitchcock told Potts that defendant and Chumbley had got out of the car and approached a man on the street. The man picked up a bottle. Defendant told the man if he didn't drop the bottle by the time he counted five, he was going to shoot him. Defendant counted to five and shot the man. Defendant told Potts that Hitchcock's statement was correct. He also told Potts that after he shot the victim, the latter started to run, and defendant fired two more shots. A short time later, Potts had a private conversation with Chumbley. Chumbley informed Potts that defendant attempted to rob the victim and then shot him. On the day before trial, Chumbley had another conversation with Potts. In this conversation, Chumbley stated that as he and defendant walked down the street, a man bumped into Chumbley and nearly knocked him off his feet. Chumbley's head was turned, and he heard a shot.

On cross-examination, Potts testified that he had been convicted of felonious theft and was on probation. At the time he first told the police about his conversations with defendant and Chumbley, he was under arrest for bad checks. He had not signed any checks, and no charges were placed against him.

Sergeant James Oglesby of the Calumet City Police Department testified that he found deceased's body about 4:30 A.M., January 21, 1967. The body was about one block from the victim's home. The police found a beer bottle across the street from the victim's body.

Doctor John Belmonte testified that he examined the body of the victim and determined that he had died as a result of a gunshot wound in the chest. The doctor found that the deceased had a moderate amount of alcohol in his system.

Riccardo P. Sampson testified for the defendant that he had been

hired as an investigator by the defense. He had interviewed Hargrove prior to trial, and Hargrove told him there was no robbery attempt in connection with the shooting.

On cross-examination, Sampson testified that Hargrove initially stated that he had been instructed by his lawyer not to comment about the incident, and refused to answer any questions. Hargrove gave negative answers to all questions.

Jerry L. Martin testified for the defense that he was a court reporter and was with Sampson when Hargrove answered no to Sampson's question as to whether there had been a robbery attempt.

Two witnesses, one a police officer, testified for the defense that Potts' reputation for truth and veracity was bad.

Defendant testified in his own behalf that on the night in question he had just been paid, and that his salary was $125.00 per week. As they drove around, all four men were intoxicated, and Hargrove had passed out in the car. The group had parked in an auto in order for defendant to purchase liquor at a nearby store. As defendant returned from the store, a man shoved him from behind knocking him to the sidewalk. When defendant looked up he saw the man standing over him menacingly with a raised beer bottle. The defendant then shot the person without aiming or thinking. He fired only one shot and returned to the car parked in the alley. On the following day defendant, accompanied by Hitchcock, visited the scene of the shooting. Defendant then went to Tampa, Florida because he feared the police. He returned to Chicago a few weeks later, but when he learned that the police were looking for him, he returned to Florida and then to Puerto Rico. While in Puerto Rico, he received but ignored a Grand Jury summons from Illinois. He remained in Puerto Rico until he was arrested by the F.B.I. The F.B.I. subsequently turned him over to the Illinois authorities about June 1, 1967. Defendant was twenty years old.

Chumbley did not take the witness stand. Hitchcock was called as a witness, but pleaded the 5th Amendment.

Defendant first contends that he was not proved guilty beyond a reasonable doubt, arguing that the testimony of the accomplice Hargrove was insufficient for conviction.

■■ The testimony of an accomplice is competent and a jury may convict a defendant on the uncorroborated testimony of an accomplice if it is satisfied as to guilt beyond a reasonable doubt. *People v. Kelly* (1942), 380 Ill. 589, 44 N.E.2d 563; *People v. Clements* (1963), 28 Ill.2d 534, 192 N.E.2d 923, *cert.* den. 375 U.S. 979.

■■ In the instant case, defendant has not pointed out any internal discrepancies in Hargrove's testimony, but argues that he was too in-

toxicated to have been able to observe any of the events. The triers of fact heard all of the testimony concerning Hargrove's consumption of liquor that evening, and apparently rejected defendant's testimony that Hargrove was asleep in the automobile at the time of the shooting. Defendant also maintains that Hargrove's testimony about a robbery attempt was impeached by the evidence presented by the investigator and court reporter. However there was a conflict as to whether Hargrove's answer to Sampson's question about the robbery attempt was intended to mean that he could not answer or that there was no attempted robbery. Hargrove had informed Sampson that he had been instructed by his attorney not to discuss the case at all, and he continually refused to answer questions. To Sampson's persistent questions he gave consistently negative responses. Resolving this conflict was properly within the province of the jury. It was the function of the jury to determine the credibility of the witnesses and the weight to be given to their testimony. Where the evidence is merely conflicting the reviewing court will not substitute its judgment for that of the trier of fact. (*People v. Davis* (1969), 107 Ill.App.2d 162, 246 N.E.2d 83.) The evidence that deceased had been drinking and that the police found a beer bottle across the street from deceased's body were facts to be considered by the jury, but of themselves did not create a reasonable doubt as to defendant's guilt. Nor did defendant's testimony that he had just been paid render incredible Hargrove's testimony that defendant stated that he wanted money to repair his auto. We believe that the jury was justified in believing Hargrove's testimony as to his observations and as to defendant's admissions made immediately prior to and after the shooting.

▮▮ Moreover, while evidence of flight by an accused does not of itself raise a presumption of guilt, it is a circumstance tending to prove guilt. (*People v. Hampton* (1968), 103 Ill.App.2d 57, 243 N.E.2d 371.) The inference of guilt which may be drawn from flight depends upon the knowledge of the accused that the crime has been committed and that he is a suspect. (*People v. Harris* (1961), 23 Ill.2d 270, 178 N.E.2d 291.) Under that criteria, the inference of guilt was properly drawn against defendant by the jury in the instant case. Defendant had shot the victim, and admittedly was aware that he was being sought by the police in connection with the shooting. We are not persuaded by defendant's argument that he fled in panic. He twice left the State to avoid being arrested, and remained in Puerto Rico for several months after the shooting until arrested by the F.B.I. We believe that the jury was entitled to consider his flight as an inference of guilty. We find that the evidence presented was sufficient to prove defendant guilty of murder beyond a reasonable doubt.

■■   Defendant next contends that portions of the prosecutor's final argument were so improper and prejudicial as to require reversal, citing six instances of such improper argument. At trial, defendant made no objection to three of these statements, and the propriety of these three remarks will not be considered by this court. Failure to object to a statement made during argument constitutes a waiver of the right to complain about that statement on appeal. *People v. Underhill* (1967), 38 Ill.2d 245, 230 N.E.2d 837; *People v. Donald* (1963), 29 Ill.2d 283, 194 N.E.2d 227.

■■   Defendant complains of a fourth instance in which the prosecutor stated that Pott's testimony that he was innocent of the bad checks was corroborated by the testimony of the police officers. Defendant made a timely objection, and the objection was overruled. The State concedes that the prosecutor was mistaken in making such a statement. However the misstatement of fact did not refer to any direct evidence against defendant, but was concerned only with the credibility of the State's witness Potts. Where the evidence proves defendant guilty beyond a reasonable doubt, this court will not reverse the conviction unless there is a showing that defendant was prejudiced by the misstatement. (*People v. Fred Oparka* (1967), 85 Ill.App.2d 33, 228 N.E.2d 291. See also *People v. Bartell* (1944), 386 Ill. 483, 54 N.E.2d 700; *People v. Watt* (1942), 380 Ill. 610, 44 N.E.2d 580.) In the instant case, the jury had already learned that Potts had been convicted of a felony and was on probation. We do not believe that defendant was prejudiced by the misstatement, and we consider its utterance to have been harmless error.

■■   Defendant also argues that in closing argument the prosecutor improperly implied that defendant had a criminal record. It is well settled that whenever the argument of defense counsel invites or provokes a response on the part of the prosecutor, defendant then cannot complain that he has been prejudiced by such response. (*People v. Edwards* (1968), 98 Ill.App.2d 128, 240 N.E.2d 430; *People v. Lewis* (1962), 25 Ill.2d 442, 185 N.E.2d 254; *People v. Wheeler* (1955), 5 Ill.2d 474, 126 N.E.2d 228.) In the case at bar defense counsel commented that the State had not shown that defendant had ever been convicted of any crime. In his rebuttal argument, the prosecutor responded that the State was prohibited from introducing any evidence about defendant's criminal record. Since defendant had invited the response, he cannot now complain about the remark. Moreover the trial judge sustained defendant's objection and instructed the jury to disregard the remark. Similarly, the prosecutor's comment about Hitchcock's refusal to testify was provoked by a remark by defense counsel. Defense counsel stated that the State should have permitted Hitchcock to testify. This was a misstatement. Hitchcock had been called as a wit-

ness by the defendant and refused to testify. Defendant cannot complain about the responsive comment made by the prosecutor.

Defendant finally argues that his conviction should be reversed because the trial court improperly permitted certain hearsay testimony to be introduced into evidence. Potts testified as to two conversations had with co-defendant Chumbley outside the presence of defendant. At the first conversation, held a day or so after the shooting, Chumbley told Potts that defendant attempted to rob the victim and then shot him. At the second conversation, held on the day before trial, Chumbley stated that as he and defendant were walking down the street, a man bumped into Chumbley and nearly knocked him down. Chumbley's head was turned, and he heard but did not see a shot fired. Chumbley did not testify at trial. No objection was made by defendant at trial to the introduction of the admitttedly hearsay testimony. Relying primarily on *Bruton v. United States* (1968), 391 U.S. 123 and on *People v. Armstrong* (1968), 41 Ill.2d 390, 243 N.E.2d 825, defendant contends that the introduction into evidence of Chumbley's statements violated defendant's sixth amendment right to confront witnesses against him.

In *Bruton* the United States Supreme Court held that the introduction of a co-defendant's confession inculpating Bruton was a violation of the latter's constitutional rights. In that case the extrajudicial confession of the accomplice had been secured in violation of the standards enunciated in *Miranda v. Arizona* (1966), 384 U.S. 436, and, on retrial, the accomplice had been acquitted. Bruton had made no admissions, and the court indicated that the other evidence against him was not strong.

In *People v. Armstrong, supra,* Armstrong and three other men were charged with murder during the commission of a robbery. A State's witness testified that two of the accomplices, out of Armstrong's presence, informed him that Armstrong had shot the man. Armstrong had made no admission. The two accomplices did not testify. The Illinois Supreme Court held that, under the *Bruton* decision, the admission of the accomplices' statements entitled Armstrong to a new trial, since the court was unable to conclude that the error was not prejudicial.

However, in *People v. Rosochacki* (1969), 41 Ill.2d 483, 244 N.E.2d 136, the Illinois Supreme Court considered the *Bruton* and *Armstrong* decisions. In *Rosochacki*, defendant argued that the trial court had committed reversible error in admiting into evidence an incriminating statement made by a co-defendant. In affirming the conviction, the court distinguished the *Bruton* and *Armstrong* decisions with the following language at p. 493-494:

"In contrast, the factual situation before us differs materially from *Bruton* and from *People v. Armstrong, ante,* p. 390, for in neither of

those cases were confessions or admissions by the defendants admitted into evidence. Here Rosochacki's oral and written statement contained admissions substantially similar to the statements made by [the accomplice]. The other evidence in this case, wholly apart from [the accomplice's] inadmissible declarations, was convincing and plainly adequate to support the verdict. It is clear to us that a very substantial difference exists between a case in which a jury hears a co-defendant statement incriminating a defendant who has himself made similar inculpatory admissions, and the *Bruton*-type case in which the co-defendant's statement is used against a defendant who had made no admissions. In the former case the prejudice to the defendant, if any, is minimal, and entirely insufficient to necessitate retrial, particularly where, as here, defendant's guilt seems clear. There can be no doubt that the jury placed far greater emphasis on [the defendant's] self-incriminating admissions than on the hearsay statements of his co-defendant."

■■ Similarly, in the case at bar, we find that the introduction into evidence of Chumbley's hearsay statements, while erroneous, was not prejudicial to defendant. Hargrove, another accomplice, testified that defendant admitted that he shot the deceased after attempting to rob him. Potts, to whom Chumbley's hearsay statements were made, had already testified that defendant twice admitted the shooting to him. Obviously, the other evidence in the case, apart from Chumbley's hearsay declarations, was convincing and clearly adequate to support the verdict of guilty. In our view, since defendant's inculpatory statements were in evidence, the admission into evidence of Chumbley's declarations was not prejudicial to defendant and does not necessitate a retrial.

Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DEMPSEY, P. J., and SCHWARTZ, J., concur.