THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM CONLEY, Defendant-Appellant.

(No. 55555; )

First District—December 7, 1971.

Allan A. Ackerman, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Nicholas D. Taubert Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

After a jury trial, defendant was found guilty of voluntary manslaughter and was sentenced to four to ten years. The charge against him stemmed from an August 26, 1969, stabbing death, for which defendant has admitted responsibility. He defended on a theory of self-defense.

On appeal defendant has not contested the legal sufficiency of the evidence adduced against him. Rather, he argues that he was denied a fair trial against him. Rather, he argues that he was denied a fair trial because of prejudicial misconduct by the prosecution and prejudicial error by the trial court. In the interest of brevity, we shall omit a statement of facts and refer to pertinent testimony only when this becomes necessary to clarify defendant's contentions or to resolve the issues he raises.

*Opinion*

First, defendant alleges that certain personal attacks by the prosecution on the defendant's trial attorney denied defendant a fair trial. Specifically, it is asserted that the Assistant State's Attorney referred to the

defense counsel as "a tricky, deceitful lawyer," an "imbecile" and a "snake." Since we cannot find the first comment in the trial record, we decline to discuss it further. An analysis of the impact and propriety of the last two personal references requires some familiarity with the context in which they were spoken. The pertinent excerpts from the record are as follows:

[Following the testimony of defendant]

"Defense Counsel: I am really sorry. [the prosecutor] is resigning tomorrow. I cannot help it. I am not ready to proceed until tomorrow morning. Incidentally, my wife is in the hospital and I am very sorry about that, too. He wants to make a sham out of it, if he does, we will make a sham.

Prosecutor: When people are snakes they really are snakes.

The Court: Would you refrain from making further comments.

Defense Counsel: I will be prepared to finish at nine o'clock tomorrow morning, your Honor.

\* \* \*

[During closing arguments]

Prosecutor: We do not feign evidence. We do not ask people to lie. We do not ask people to come in and perjure themselves. Also, I take that as a definite slur against my own character, knowing the kind of person that I am, and I tell you that this is not done. Only an imbecile would say we tried to feign testimony.

Defense Counsel: I object. That is objected to. That is horrible. I did not call anybody any names.

The Court: I do not think that it is necessary to call anybody an imbecile. The jury will disregard it.

Prosecutor: [Counsel] would have you believe that the little boy we talked to, we talked to him for hours and put words in his mouth. We had him sit there with pictures and said that that is Conley and you'd better pick him out and we said we will put you on the stand and said when you see the guy on trial you had better identify him. It just does not work that way. I do not try cases that way and my partner doesn't. These officers do not work that way either."

Initially, we condemn the language used by the Assistant State's Attorney. While we are aware of the provocations by defense counsel, we see no excuse for indulging in personal diatribes. Nonetheless, our obligation is to determine whether the prosecution's conduct denied defendant a fair trial. We hold that it did not. The "snake" reference was a response to the equally intemperate and unwarranted outburst by the defense attorney. As such, it comes within the established Illinois rule that a defendant cannot complain that he has been prejudiced by a

prosecutor's response which has been provoked or invited by the argument of defense counsel. (*People v. Edwards*, 98 Ill.App.2d 128; *People v. Eickert*, 124 Ill.App.2d 394.) Similarly, the prosecutor's "imbecile" reference was provoked by defense counsel's earlier suggestions that the prosecution had feigned testimony. In addition, the trial court's immediate admonishment of counsel and instruction to the jury to disregard sufficed to rectify whatever prejudice might otherwise have resulted. Therefore, the conduct of the Assistant State's Attorney did not deny defendant a fair trial.

■■ As a second ground for requesting a new trial, defendant alleges that a misrepresentation by the prosecution induced him to abandon his hearing on the voluntariness of his post-arrest statement. When the direct testimony of Detective Farley Miles indicated the existence of a verbal statement by the defendant, his attorney requested a hearing into the voluntariness of that statement. The hearing was commenced immediately, out of the presence of the jury, and Detective Miles related the circumstances surrounding the statement. After cross-examination the trial adjourned until the following morning to facilitate the production of other witnesses for the hearing. The next morning the following colloquy occurred out of the presence of the jury:

"The Court [to Assistant State's Attorney]: Do you have some additional witnesses that you wish to call?

Prosecutor: On the trial, yes. I do not, on the motions, unless [counsel] would like me to bring out during the case in chief, which I would like to do, evidence favorable to the defendant and that is that he made an exculpatory statement.

Defense Counsel: Your Honor, with that statement I will waive the preliminary hearing on the voluntary nature of the statement and be willing to proceed on the jury now.

Prosecutor: Fine.

Is that clear for the record that the defendant is waiving any preliminary hearing on the one voluntariness of the statement?

Defense Counsel: Yes."

It is defendant's contention that the characterization of his post-arrest statement as "exculpatory" was a misrepresentation which lured him into abandoning the hearing.

The post-arrest statement, as related by Detective Miles at trial, amounted to an assertion by defendant that he knifed the deceased solely in self-defense and a statement that the knife defendant used was in his locker. If defendant had claimed at trial that he did not stab the deceased, his statement would by inference be inculpatory as well as exculpatory. However, his attorney made clear during opening argument that de-

fendant would not deny having killed the deceased, but would defend on a theory of self-defense. The post-arrest statement was entirely consonant with this expressed theory of defense and thus fit within the definition of "exculpatory": "Clearing or tending to clear from alleged fault or guilt; excusing." (Black's Law Dictionary, 675 (4th rev. ed. 1968).) In addition, the defendant's position that he and defense counsel were misled is undermined by the fact that defense counsel at no time urged any objection to Detective Miles' recitation of his conversation with defendant, nor did he at any time thereafter seek to reopen the preliminary hearing or suggest that he had been misled. We conclude that there was no misrepresentation and that defendant was not misled into abandoning his right to a hearing.

● 5, 6 Third, defendant alleges that the trial court abused its discretion in failing to grant an overnight continuance to enable the defense to photograph the scene of the crime. The continuance was requested after the following testimony: In an effort to impeach the testimony of one of the prosecution's occurrence witnesses, the defense produced a witness who testified that the corner of 35th and Prairie, the scene of the crime, could not be viewed from the porch where the State's witness had been standing; the State produced a rebuttal witness who testified that the corner could be seen from the porch. Defendant's response was a request for a continuance in order to obtain photographs. Two cases have been cited to support the contention that the denial of this request was an abuse of discretion. The first, *People v. Crump*, 5 Ill.2d 251, is clearly distinguishable. In that case defendant's motion for a continuance was made the day before he received the prosecution's list of 48 prospective witnesses. The seven day continuance which was allowed left only ten days for defendant to interview all 49 witnesses. The dilemma faced by Crump's attorneys did not reflect a lack of diligence or initial preparation. In addition, it was crucial to Crump's defense that all the witnesses be interviewed. This contrasts with the case at bar, where only a lack of preparation necessitated a delay for photographs, and where the evidence sought to be obtained during the continuance would have been of little significance.

The second cited case is *People v. Kees*, 32 Ill.2d 299; we agree that the rationale for the Supreme Court's affirmance in that case should also govern the facts at bar. First, in *Kees* the court recited the established rule that "the granting of a continuance during trial is purely a matter of discretion resting with the trial court, and * * * its exercise will not be disturbed on review unless there has been a manifest abuse of discretion. [Cases cited.]" (32 Ill.2d at 303, 304.) Second, the need in *Kees* for a one day continuance was largely the result of defendant's lack

of diligence. Third, the testimony had already adequately crystallized the issue of credibility. Fourth, the evidence sought to be obtained during the continuance was of minor significance to defendant's case. Each of these justifications is equally applicable to the instant case. Thus, the trial court's denial of defendant's request was not an abuse of discretion.

■■ As a fourth ground for requesting a new trial, defendant contends that it was error for the trial court to refuse to give the following instruction:

"You are instructed that when a defendant charged with homicide is where he has a lawful right to be, he has a right to stand his ground, and, if he is reasonably apprehensive of injury, he is justified in taking his assailant's life."

This contention has no merit. The appropriate I.P.I. instruction concerning self-defense was given by the trial court in compliance with the Illinois Supreme Court Rules. (Ill. Rev. Stat. 1969, ch. 110A par. 451(a).) Further, defendant's tendered instruction is a gross misstatement of the law of Illinois concerning self-defense. (See Ill. Rev. Stat. 1969, ch. 38, par. 7—1.) There was no error in refusing to give that instruction.

■■ Finally, defendant alleges that the trial court's refusal to allow cross-examination of an eyewitness regarding the deceased's reputation for carrying a knife constituted prejudicial error. The questions, to which objections were sustained on grounds of materiality, were as follows:

"Q. Did you ever see him carry a knife before?
\* \* \*
Q. Did you see him with a knife the day before? Would you recall?
\* \* \*
Q. You never saw him with a knife?"

It is contended that in sustaining objections to these questions, the trial court violated the following rule of evidence, expressed in *People v. Adams*, 25 Ill.2d 568, 572:

"Evidence as to the violent disposition of the decedent \* \* \* is admissible in a prosecution of the defendant for killing the decedent where the defendant relies upon self-defense and preliminary testimony establishes an act of aggression by decedent. [Cases cited.]"

While we have no quarrel with defendant's statement of the applicable rule of law, we do not agree that the trial court failed to observe that rule. Defendant's questions were asked on cross-examination, during the prosecution's case in chief. At that time, there had been no testimony establishing or even suggesting an act of aggression by the decedent. As stated in *People v. Terrell*, 262 Ill. 138, 143:

" 'It appears, however, that the evidence was offered before the defendant testified, and was rejected, and that it was not again offered

after his testimony. At the time it was offered there was no evidence showing that the deceased was the assailant and the evidence was then properly excluded. If the defendant desired the evidence to go to the jury it should have been offered after the introduction of the evidence tending to show the assault by the deceased.' "

Therefore, defendant's questions sought matter immaterial to any issue properly before the court at the time they were asked, and the objections were properly sustained.

We find no merit in defendant's request for a new trial and therefore affirm the judgment.

Judgment affirmed.

LEIGHTON, P. J., and SCHWARTZ, J., concur.