THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK KELLY, a/k/a FRANK WRIGHT, Defendant-Appellant.

(No. 58629;

First District (5th Division)—January 24, 1975.

754

James J. Doherty, Public Defender, of Chicago (Bernard M. Talbert and James N. Gramenos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Jerome Charles Randolph, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted on two counts of armed robbery and sentenced to concurrent terms of 10 to 25 years.

On appeal, he contends (1) prejudicial religious remarks were made during closing argument; (2) improper reference was made during argument to his prior burglary conviction; (3) the proof presented was not consistent with the charges in the indictment; and (4) the sentence is excessive and should be reduced, because of his background and physical condition.

The facts are summarized as follows. On a December afternoon, James Sheridan observed a stranger enter and walk to the back of his grocery store. Another stranger then entered, walked up to a counter, and drew a shotgun from under his coat. When Sheridan saw the shotgun, he took whatever money he had in his pockets and from nearby cash drawers. He gave this money to a clerk for safekeeping, and he and this clerk left the store through a front door. While standing on the sidewalk, he observed the two men, one holding the shotgun, speaking with a store clerk. At trial, Sheridan identified defendant as the man with the shotgun and stated he was wearing a dark hat and coat.

Burtha Young, a clerk, was behind a counter when she noticed Sheridan leave the store with one of the other clerks. She turned to ask another clerk, Debra Costic, why they were leaving and at that time she observed a man, whom she identified at trial as defendant, pointing a shotgun at Debra. He told Debra to give him the money, and Debra gave him the contents of the register. Burtha then opened the register at her counter and handed the money to Debra, who passed it on to defendant. No demand for money from Burtha was made by defendant. All of the occupants of the store, including Debra and Burtha, were then locked in a walk-in meat cooler.

Sheridan, who had remained outside, observed the two men leave the store and enter a yellow Buick with a black top. A woman motorist, apparently hearing Sheridan call for help, trailed the Buick and obtained its license number, which she later gave to Sheridan who in turn gave it to the police with a description of the car and the two men.

Later that evening, Officer Massano investigated a traffic accident in-

volving a black and yellow Buick which had struck two parked cars. He said that the driver of the Buick, later identified as defendant, had an odor of alcohol on his breath and was wearing a dark coat which came down below his waist. He also noted the license number was HK9478.

On the day following the robbery, Officer Bills, who had obtained the same license number of HK9478 from Sheridan, determined the car was owned by James Giles who, when brought to the station and placed in a lineup, was not identified by Sheridan as a participant in the robbery.

Later, Giles brought Officer Bills and another officer to an apartment where defendant was staying and, when Bills observed that defendant fit the description Sheridan had given him of one of the robbers, he placed defendant under arrest. Defendant was brought to the station and placed in a lineup with four other men, and he was identified by Sheridan as one of those involved in the robbery. Bills took a photograph of this lineup and when it was shown to Burtha Young, she also identified defendant as a participant.

Defendant and Reverend Walter Cox testified that on the day of the robbery defendant was painting Reverend Cox's home from early morning until about 4 P.M., when Reverend Cox, who had been at his home the entire day, drove defendant to Giles' place of employment where defendant picked up Giles' car. Defendant also testified that he took the car to pick up some chemicals for Giles. Giles, however, testified he had given defendant permission to use his car on that day to look for a job. He had agreed to leave his car in a lot at his place of employment for defendant to pick up, and when he checked the lot at 12 noon he noticed that his car was gone. Defendant testified further that after he had picked up Giles' car, he did not go for chemicals but instead went to a tavern for about two hours and, after leaving the tavern, while driving Giles' car he collided with two parked cars while trying to avoid a small girl.

OPINION

I.

Defendant first contends he was denied a fair trial because of prejudicial remarks by the prosecutor during closing arguments. His testimony was that at the time of the robbery, he was painting the home of Reverend Cox. The latter, a Baptist minister and pastor, supported defendant's testimony in this regard. In rebuttal argument, the prosecutor made the following comments:

> "If there had been a statute of the Blessed Mary in the courtroom when the Reverend testified, she would have put her hands over her ears because there was nothing spewing forth from the witness chair but unmitigated lies.

* * *

I am sorry if the State couldn't bring in a fine, upstanding witness like the Reverend Cox, self-ordained, or ordained by some other Reverend. How unusual that he never finished grammar school—strike that; he never finished high school, but he went on to a university—two colleges, one of divinity that he didn't finish and one of business school; this he never finished. How strange. And this Reverend, he is separated from his wife. How strange.

* * *

* * * if he [defendant] can get somebody to come up and lie for him under the cover of the cloth of God, I will believe him. That's what you are saying [if you find the defendant not guilty]."
Defendant argues the Blessed Mary is a dominant symbol of the Catholic Church and, because Reverend Cox was a Baptist minister and both he and defendant were black, that the comments were an appeal to white Catholics on the jury calculated to evoke religious and racial prejudice.

■■ Initially, we note that no objection was made to these comments, and thus the contentions that they were appeals to racial and religious prejudice must be deemed to be waived. (*People v. Donald,* 29 Ill.2d 283, 287, 194 N.E.2d 227.) Furthermore, we are of the opinion that these comments were not error requiring reversal, for the following reasons:

■■ First, we note that whether language used by a prosecutor will require reversal of a conviction depends upon the facts of each case (*People v. Baker,* 365 Ill. 328, 334, 6 N.E.2d 665), and that where the argument of defense counsel invites or provokes a response, defendant cannot complain that he was prejudiced by the response. *People v. Reyes,* 131 Ill.App.2d 134, 266 N.E.2d 539.

Here, the record discloses that defense counsel, in his final argument, emphasized that Reverend Cox was a Baptist minister and missionary, and he said, "I can't imagine any Baptist minister or missionary can sit on the witness stand after taking an oath and tell you that a man painted his house on a certain day when in fact it did not happen * * *." Thus, it appears that the prosecutor's comments, although perhaps exceeding the bounds of propriety, were in response to the argument of the defense counsel.

■■ Second, not every ill-advised statement in a closing argument will warrant reversal of a conviction (*People v. Phillips,* 126 Ill.App.2d 179, 261 N.E.2d 469), nor will remarks of counsel in final argument, even though improper, constitute reversible error unless they result in substantial prejudice to a defendant. (*People v. Nilsson,* 44 Ill.2d 244, 255 N.E.2d 432.) Here, it appears that two eyewitnesses with good oppor-

tunity to view the participants in the robbery, made positive pretrial and trial identifications of defendant. In addition, a police officer testified that on the day of the crime defendant was in an automobile accident while in the possession of the car used in the robbery, and at that time he was wearing a dark coat similar to the description of the coat given by Sheridan. Moreover, although Reverend Cox and defendant said that Giles' car was taken from the parking area sometime after 4 P.M., Giles said his car was gone from that area at 12 noon. In view of the totality of the evidence supporting the jury's finding of guilt, we think that the comments complained of were not a material factor in the conviction of defendant (see *People v. Berry*, 18 Ill.2d 453, 165 N.E.2d 257), and we believe they did not result in substantial prejudice to defendant.

## II.

■■■ · Defendant also complains that the prosecutor's closing argument reference to his prior conviction was inflammatory and prejudicial. In this regard, we note that it was brought out during defendant's direct examination that he had previously been convicted of a crime, and it was developed in his cross-examination that it was for burglary. The following colloquy took place in the rebuttal argument of the prosecutor:

"* * * this man Mr. Kelly who is not a stranger to the penitentiary. Ladies and Gentlemen, he may enjoy going back. And I say the only thing—

MR. MARTIN [defense counsel]: I object.

THE COURT: Sustained."

It is contended that, although the comments would have been proper had they been directed to defendant's credibility, they were improper here because they were intended to establish his guilt of the offense charged. We disagree. Where a defendant refers to his former conviction and incarceration, reference during closing argument by the prosecutor to that fact is not prejudicial. (*People v. Del Prete*, 395 Ill. 110, 69 N.E. 2d 512.) Furthermore, it has been held that a prosecutor may draw inferences unfavorable to defendant if based on the evidence and may "denounce his wickedness, even to the point of invective." (*People v. Williams*, 26 Ill.2d 190, 186 N.E.2d 353.) Here, defendant's counsel brought out the fact of his prior conviction and, as we have noted before, there was solid evidence of his participation in the crime. Under the circumstances, the statements that defendant "is not a stranger to the penitentiary" and that "he may enjoy going back" are proper inferences drawn from the evidence and, although unfavorable to defendant, they do not exceed the bounds of fair comment. Reversal should not be granted unless we believe the verdict would have been different had the

comments not been made. (See *People v. Nicholls*, 42 Ill.2d 91, 245 N.E. 2d 771.) We do not so believe here.

## III.

Defendant also maintains that the evidence does not warrant a conviction for the armed robberies of James Sheridan or Burtha Young, as charged in the indictment, because neither had any money taken from them.

In the two count indictment, defendant was charged with committing armed robbery "in that he by the use of force and while armed with a dangerous weapon took an amount of United States currency (the exact amount of which is unknown to said grand jurors) from the person and presence * * * of James Sheridan and Burtha Young."

Sections 18—1 and 18—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, pars. 18—1 and 18—2) in pertinent part provide:

> "18—1. Robbery. (a) A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.
>
> 18—2. Armed Robbery. (a) A person commits armed robbery when he violates Section 18—1 while armed with a dangerous weapon."

■■ In a prosecution for robbery, the gist of the action is that the accused forcibly took property that was in the care, custody or control of another person. (*People v. Steenbergen*, 31 Ill.2d 615, 203 N.E.2d 404.) Proof of actual ownership is not necessary where possession by the victim is shown. *People v. Wooley*, 127 Ill.App.2d 249, 262 N.E.2d 237.

In *People v. Daniels*, 354 Ill. 600, 188 N.E. 886, the indictment for robbery charged that money was taken from one Kaufman, while the proof showed that the money actually belonged to Kaufman's employer. The court held that the ownership of the property was unimportant, as its possession by the victim was sufficient for the purpose of establishing the crime of robbery.

■■ In the instant case, the evidence reveals that defendant, armed with a shotgun, obtained money from the possession of Debra Costic in Burtha Young's presence and then took an additional amount from Debra which had been given to her by Burtha. While ownership of the money was in Sheridan, it is apparent that money also was in Burtha's possession or in her custody and control, and it is evident that she was responding to the threat of the shotgun when she gave money from her cash register to Debra to give to defendant. The thrust of the crime of robbery is the taking of property from a person by force and against his or her will when that person has a superior right to the property. When, as

here, the individual takes the property from such a person while armed with a shotgun, the essential elements of the crime of armed robbery were established. Burtha gave up the money from her cash register under threat of the use of a shotgun by defendant. Sheridan, when he saw the shotgun, saved some of his money by giving it to a clerk as they left the store and, while he was outside, he observed defendant holding the shotgun, talking to a clerk at the cash register. We believe the total proof also established the commission of the robbery in his presence. In view thereof, we are of the opinion that the indictment properly charged the armed robbery of James Sheridan and Burtha Young.

## IV.

The final contention of defendant is that the sentence of 10 to 25 years is excessive and should be reduced, because of his background and physical condition. In his briefs, defendant informs us that while incarcerated he developed a renal condition resulting in the removal of both kidneys. However, he had a successful transplant of a kidney from his sister and subsequently had additional surgery. Dr. Jonasson, in a report dated June 7, 1974, which was included in the reply brief, stated that defendant had recovered completely from his later surgery and was then in relatively good health, except for continued medication to prevent rejection of the kidney. The imposition of sentences is within the discretion of the trial court, and courts of review will not interfere with that discretion unless it is manifest that the sentence is excessive. *People v. Kendricks*, 4 Ill.App.3d 1029, 283 N.E.2d 273.

■■ Here, the trial judge, prior to sentencing, had the opportunity to study the conduct and demeanor of defendant throughout the trial and to weigh his potential for rehabilitation against such factors as the nature of the crime, his character and his prior record, consisting of a burglary committed while on probation from a conviction of criminal damage to property. The sentence was within statutory limits, and it is our view that, when given, it was not manifestly excessive. Defendant now asks, however, that we consider two medical reports, particularly an unverified report dated June 7, 1974, of the surgeon who performed the kidney transplant which, among other things, states:

"* * * He again recovered completely and is now in relatively good health, though on continued immunosuppressant medication to prevent rejection.

* * * I have continued to follow him regularly in the outpatient department and have spent long times talking with him and it is my impression that he is now a responsible and reliable citizen. * * * He has some difficulty maintaining proper diet

and exercise as well as medication schedule, which is of course critical to the achievement of his optimal health, and it would be in his best interest to be released from prison in order to maximize the opportunity for achievement of adequate health."

▮▮ Initially, we note that the doctor reported it would be in the best interest of defendant that he be "released from prison in order to maximize the opportunity for achievement of adequate health." This carries little weight, in view of the fact that the doctor also stated defendant had completely recovered and was in relatively good health though on continued medication to prevent rejection.

▮▮ Moreover, since the contents of the letter are hearsay and are not a part of the record on appeal, little, if any, consideration should be given to them. While this court has the authority to reduce a sentence, the supreme court has indicated it should be exercised with caution and circumspection. (*People v. Fox*, 48 Ill.2d 239, 251, 269 N.E.2d 720; *People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673.) Here, we believe that the showing of defendant is insufficient to allow us to exercise our authority to reduce his sentence.

For the reasons stated, the judgment is affirmed.

Affirmed.

BARRETT, P. J., and LORENZ, J., concur.