(No. 51629

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. LEE ARTHUR SMITH, Appellant.

*Opinion filed January 23, 1980.*

Robert Agostinelli, Deputy Defender, and Verlin R. F. Meinz, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay, Thomas E. Holum, Melbourne A. Noel, Jr., and Marcia L. Friedl, Assistant Attorneys General, of Chicago, and James Fitzgerald, law student, of counsel), for the People.

MR. JUSTICE MORAN delivered the opinion of the court:

In each of two separate jury trials before different trial judges in the circuit court of Kankakee County, the defendant, Lee Arthur Smith, was convicted of robbery and intimidation. In the first case, which involved a Montgomery Ward (Ward) store, the defendant was sentenced to 6 to 20 years for robbery and to a concurrent sentence of 3 to 10 years for intimidation. In the second case, which involved a K Mart store, the defendant was sentenced to 6 2/3 to 20 years for robbery and to a concurrent term of 3 1/3 to 10 years for intimidation. In entering sentence in the K Mart case, the trial court directed that those sentences were to be served consecutively to the sentences entered in the Ward case. The appellate court affirmed both robbery convictions but vacated the intimidation convictions, holding that intimidation is a lesser included offense of robbery. (66 Ill. App. 3d 957.) We granted the defendant leave to appeal.

The defendant contends that (1) the offense of robbery was not established since there was no taking from the victim's person or presence; (2) the trial court, in the Ward case, improperly excluded the testimony of a defense witness, Randy Wicks, which testimony would have impeached the credibility of a State's witness, Glenn Dicker-

son; and (3) the trial court abused its discretion in ordering consecutive sentences for the two convictions.

The State seeks cross relief contending that the appellate court erred in holding that intimidation is a lesser included offense of robbery.

On Saturday, October 16, 1976, at 1:15 p.m., Donald Baumgartner received a telephone call at the K Mart store which he managed. The caller stated that he was a member "of the PLA" and that bombs and firearms had been placed in the store and would be set off in 12 minutes unless the caller's demands were met. Baumgartner was told to put $10,000 in a bag, remove his coat, walk out of the store, deposit the bag of money in a telephone booth near the K Mart parking lot entrance, and return to the store to receive a second phone call. Baumgartner placed $4,500— all he could obtain—in a bag and followed the caller's instructions. He returned to the store to await the second call, which never came. A K Mart security man who kept watch on the phone booth saw a man, later identified as the defendant, go to the booth, pick up the bag, and walk away with it. The guard pursued the man but lost him after a few blocks.

On Saturday, October 23, 1976, at 1:30 p.m., Terry Claudnic, on duty as assistant manager of the Ward store, received a phone call. The caller said he was a member "of the PLA" and threatened to detonate three bombs that had been planted in the store and two planted in a nearby police station unless $10,000 were delivered within six minutes. The caller said the bombs would be detonated if Claudnic attempted either to call the police or to evacuate the store. Claudnic was instructed to place $10,000 in a bag, exit the building, walk to a specific nearby location, leave the bag, and then to retrace his steps without looking back. Claudnic immediately notified the police. Paper was placed in a store money bag and a police surveillance was set up near the designated site. The defendant was observed in a blue and white Buick, watching Claudnic's

movements as the latter went through the motions of meeting the caller's demands. Shortly after Claudnic left the drop site, the defendant approached, crossed the street away from the bag while looking around, moved back toward the bag and finally picked it up. When he returned to his car, he was arrested.

Defendant argues that his actions amounted only to theft by threat (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(c)), and that, consequently, he was improperly charged with the crime of robbery. Assuming, *arguendo,* that the defendant could have been charged with theft by threat, the State is not precluded from exercising its option to charge him with robbery as long as the necessary elements of the latter offense are properly pleaded and proved. (*People v. Vriner* (1978), 74 Ill. 2d 329, 344-45; *Brinkley v. United States* (8th Cir. 1977), 560 F.2d 871, 873, *cert. denied* (1977), 434 U.S. 941, 54 L. Ed. 2d 302, 98 S. Ct. 435.) We therefore address the question of whether the defendant was properly charged and proved guilty of the crime of robbery.

The defendant first contends that, in both cases, the evidence failed to show a taking from the person or presence of a victim, an essential element of robbery. (Ill. Rev. Stat. 1975, ch. 38, par. 18—1.) The Criminal Code of 1961 provides:

> "(a) A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1975, ch. 38, par. 18—1.)

The requirement that there be a taking "from the person or presence" is not, however, limited to removal of the property from the victim's person or from the immediate presence of the owner, possessor or custodian.

In *People v. Braverman* (1930), 340 Ill. 525, the victims were locked in a back room of a drug store while property was taken from the store. This court found that the requirement of a taking from the person or presence

was met when the property was in the possession or control of the victim and the robber used violence or fear of violence as the means to take it. *People v. Braverman* (1930), 340 Ill. 525, 531. See *People v. Sicks* (1921), 299 Ill. 282; *Welch v. State* (1975), 235 Ga. 243, 219 S.E.2d 151; *Clements v. State* (1890), 84 Ga. 660, 11 S.E. 505; *State v. McDonald* (1968), 74 Wash. 2d 141, 443 P.2d 651.

While no Illinois case has addressed the issue in the context of the factual pattern here presented, a similar situation was addressed in *Brinkley v. United States* (8th Cir. 1977), 560 F.2d 871, *cert. denied* (1977), 434 U.S. 941, 54 L. Ed. 2d 302, 98 S. Ct. 435. There a bank manager received a call from the defendant, who threatened to set off a bomb at the manager's home unless $75,000 were delivered to the caller. Following the caller's instructions, the manager went to two different phone booths and was ultimately directed to throw the money over a specific viaduct. He complied and drove away. Although the defendant never gained possession, the court found that the telephone call "was as much of a personal confrontation as if [the offender] had entered the bank with a gun and demanded that [the victim] hand over the bank's money." *Brinkley v. United States* (8th Cir. 1977), 560 F.2d 871, 873, *cert. denied* (1977), 434 U.S. 941, 54 L. Ed. 2d 302, 98 S. Ct. 435. Contra, *United States v. Culbert* (9th Cir. 1977), 548 F.2d 1355, *rev'd on other grounds* (1978), 435 U.S. 371, 55 L. Ed. 2d 349, 98 S. Ct. 1112; *People v. Moore* (1974), 184 Colo. 110, 518 P.2d 944.

The presence requirement of the robbery statute relates to the property taken; it must have been in the presence or control of the victim. The offense of robbery is complete when force or threat of force causes the victim to part with possession or custody of property against his will. In this case, the property was in the actual control and in the presence of each of the managers, and each was

compelled, by the defendant's threats of force, to give up such property. The elements of robbery were therefore present.

The defendant next contends that the trial court erred when, in the Ward case, it refused to allow a defense witness to testify for the purpose of impeaching the credibility of a prosecution witness.

In its case in chief, the State called Glenn Dickerson, who had met the defendant while both were incarcerated in the county jail. Dickerson testified that the defendant offered him $10,000 to confess to the two offenses with which the defendant was charged; that the defendant wrote out the confession and had Dickerson copy and sign it. Dickerson later retracted the confession. On cross-examination, the defense asked Dickerson if he had talked with Wicks about the defendant's case while in the county jail. Dickerson replied, "No."

The defense proposed to call Randy Wicks as a witness to impeach the testimony of Dickerson. The State objected on the grounds that a proper foundation had not been laid. The court recalled Dickerson to allow defense counsel to lay the proper foundation. Again, defense counsel failed to do so and the State renewed its objection. Thereupon, defendant, outside the presence of the jury, introduced a formal offer of proof relating that, while in the county jail, Dickerson told Wicks that the State had offered him (Dickerson) "a deal" if he would retract his confession and testify against defendant. The court excluded the testimony of Wicks due to the fact that a proper foundation for the impeachment of Dickerson had not been laid by defense counsel.

Before a witness may be impeached by a prior inconsistent statement, it is required that a proper foundation have been established by directing the attention of the witness to the time, place and circumstances of the statement, as well as to the substance of the statement in order to avoid unfair surprise and to give the witness an oppor-

tunity to explain. (*People v. Sanders* (1974), 56 Ill. 2d 241, 251; *People v. Moses* (1957), 11 Ill. 2d 84, 87.) Defendant, however, argues that the formal requirements for establishing a foundation may be relaxed where the purposes of the foundation have been satisfied. He points out that, since Dickerson had denied speaking to Wicks about the defendant's case, he could not have been unfairly surprised by a statement he had already denied making. Defendant cites *People v. Henry* (1970), 47 Ill. 2d 312, wherein the formal foundation requirement was relaxed. *Henry*, however, is distinguishable in that, there, the foundation requirements were substantially satisfied. The witness was asked whether she had had a prior conversation with the impeacher specifically regarding the statement she had given to the police during their investigation of the subject crime. The purposes of the foundation requirement were satisfied, for the witness was alerted to the substance of the remark and to the identity of the person to whom it was allegedly made. The element of unfair surprise was eliminated. Since, in this case, defense counsel only asked Dickerson generally if, while at the county jail, he had spoken to Wicks about the defendant's case, the foundation requirement was not met. Despite a second opportunity on Dickerson's recall, defense counsel still failed to substantially satisfy the foundation requirements. The foundation in this case was too general and inadequate to qualify under the *Henry* exception.

The State, in its brief for cross relief, contends that the appellate court erred in finding that intimidation is a lesser included offense of robbery.

Intimidation is defined in the Criminal Code of 1961:

> "A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts:
>> (1) Inflict physical harm on the person threatened or any other person or on property; or
>> ***

(3) Commit any criminal offense; \*\*\*." (Ill. Rev. Stat. 1975, ch. 38, par. 12—6(a).)

An included offense is defined by statute as an offense which "(a) [i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or (b) [c]onsists of an attempt to commit the offense charged or an offense included therein." (Ill. Rev. Stat. 1975, ch. 38, par. 2—9.) In order to be classified as a lesser included offense, "all the elements of the lesser must be included within the greater." *People v. King* (1966), 34 Ill. 2d 199, 200.

Intimidation requires specific intent to cause another to perform or omit the performance of certain acts. (Ill. Rev. State. 1975, ch. 38, par. 12—6(a).) Specific intent is not, however, an element of robbery. (*People v. Banks* (1979), 75 Ill. 2d 383, 392.) Intimidation is not, therefore, a lesser included offense of robbery, for it requires proof of an element that is not required for the offense of robbery. *People v. Vriner* (1978), 74 Ill. 2d 329, 347.

The defendant's final contention is that the second of the trial judges abused his discretion in ordering that the sentence imposed in the K Mart case be served consecutively with the sentence imposed in the previous Ward case. Section 5—8—4(a) of the Unified Code of Corrections gives the court discretion to impose consecutive sentences "when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State or in another state \*\*\*." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(a).) Since the defendant was subject to sentence from the Ward case, it was clearly within the trial court's discretionary authority in the K Mart case to order a consecutive sentence. The guidelines for imposition of such sentence are set forth in section 5—8—4(b) of the Unified Code of Corrections:

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of

the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court may set forth in the record." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(b).)

The trial court, here, took into consideration that, on two occasions within one week, the defendant ordered two store managers to turn over large sums of money under threats of bombing crowded stores. Additionally, the defendant's presentence report showed a lengthy history of crimes in California. In 1959, as a juvenile, defendant was convicted of grand auto theft, for which he served one year in a vocational institution. In 1960 defendant was convicted of armed robbery of a grocery store and was sentenced to five years to life. He was returned to the vocational institution where he served one year. In 1962, defendant was convicted of four counts of armed robbery which were subsequently reversed. Three of the robbery counts were dismissed after the defendant pleaded guilty to the fourth count, for which he received a sentence of six months to life. While incarcerated in 1971, defendant had a physical encounter with a correctional officer which confrontation led to the imposition of an additional term of one to three years. Based upon the seriousness of the offenses before us and the past criminal record of the defendant, we find the trial court did not abuse its discretion when it imposed consecutive sentences.

We conclude that the appellate court erred in vacating the convictions and sentences for the offenses of intimidation. That portion of the judgment is reversed and the circuit court's judgments are affirmed. In all other respects, the judgment of the appellate court is affirmed.

*Appellate court affirmed in*
*part and reversed in part;*
*circuit court affirmed.*