THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LORENZO CARPENTER *et al.*, Defendants-Appellants.

First District (5th Division)    Nos. 79-740, 79-870 cons.

Opinion filed April 24, 1981.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellant Arthur Stovall.

Ralph Ruebner and Susan Bandes, both of State Appellate Defender's Office, of Chicago, for appellant Lorenzo Carpenter.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Kathleen Warnick, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendants, Arthur Stovall and Lorenzo Carpenter, were concurrently tried, respectively by judge and jury, and convicted of armed robbery. The court sentenced Stovall to 6 years' imprisonment and sentenced Carpenter to a term of 30 years. The issues raised by Stovall are whether there was probable cause for his warrantless arrest and whether the evidence is sufficient to prove him guilty beyond a reasonable doubt. Carpenter's appeal presents the issue of whether it was proper for the trial court to admit evidence of other offenses at the hearing on aggravation and mitigation. The pertinent facts follow.

The defendants were charged with the armed robbery of R. M. Danley, an employee of O. B. Masco Drapery Hardware Company at 1737 South Michigan in Chicago. Jack Schnitz, the store manager, testified that on March 7, 1978, at 9:50 in the morning, he was in the work area at the back of the store when he heard the buzzer attached to the front door. There were two aisles that ran to the front of the store. As Schnitz walked down one of the aisles, he encountered Carpenter. Schnitz asked if he could help, but Carpenter just kept on walking to the work area. When Schnitz saw another man walking down the other aisle he ran out of the store.

Danley testified that he heard Schnitz ask, "Can I help you," and "What are you looking for?" but he did not hear a reply. Then Danley saw two men standing near some merchandise bins. One of the men opened his coat, pulled out a shotgun, and yelled "Freeze m_____ f_____."

The front door buzzer sounded again. When the man with the shotgun turned toward the front of the store, Danley ran into the washroom and locked the door.

Maude Noflin, a receptionist who worked across the street, testified that she saw Schnitz run out of the store followed, a short time later, by another man.

Schnitz testified that he saw Stovall run out of the store, while carrying the company cash box, and yet into Yellow Cab No. 1146.

Police Officer Steven Glynn testified that he was on patrol with his partner when they received a message that there had been an armed robbery at 1737 S. Michigan and that the robbers fled in Yellow Cab No. 1146. Ten to 14 minutes later they saw the cab and they questioned the driver, Kenneth Wardlaw. According to Wardlaw he had been parked at a cab stand on 18th near Michigan, about 20 minutes earlier, when two men got into his cab and ordered him to drive them to a building at 22nd and State. He said he dropped them off at the front of the building.

Officer Glynn testified that Wardlaw appeared nervous. The officers took Wardlaw back to the area of the robbery and asked him to show them the cab stand. There was no cab stand, and Wardlaw's new story was that he had been waiting for someone to come out of a nearby union office. Then Wardlaw told the officers that the two men had flagged him down at 23d and State, ordered him to drive to 18th and Michigan, left the cab for a few minutes, returned, and ordered him to drive back to 22d and State.

Glynn also testified that Schnitz, Danley, and Noflin gave descriptions of the robbers. The officers then asked Wardlaw to show them where he dropped off the two men. Wardlaw showed them the rear of the building at 2250 S. State, even though he originally told the police he dropped the two men off at the front of the building.

The officers arrested Wardlaw and took him to the station at 51st and Wentworth. When he was questioned at the station Wardlaw said, "I may as well tell you the truth," and he informed the police that he participated in the robbery. Officer Glynn testified that Wardlaw said he had been visiting Apartment 502 in the building at 2250 S. State. Stovall and Carpenter were there and they discussed robbing a currency exchange at 18th and Indiana. After driving around the block several times, they told Wardlaw to park on 18th near Michigan. Stovall and Carpenter left. When they returned a few minutes later, they had a cash box. Wardlaw drove them back to 2250 S. State and they all went to Apartment 502 where they split the loot. A few minutes after Wardlaw left, he was stopped by the police.

Acting on the information supplied by Wardlaw, and the descriptions obtained by the eyewitnesses, several officers went to Apartment 502 at 2250 S. State, knocked on the door and announced their office. When Gloria Perkins opened the door for the police they went into the apartment and arrested the defendants. A window in the apartment was open and a sawed-off shotgun was found on the ground below. Besides this, there were shotgun shells in Carpenter's coat pocket.

Gloria Perkins testified that she lived in Apartment 502 and that Wardlaw, Carpenter, and Stovall left the apartment with a shotgun about

9 in the morning on the day of the robbery. They returned about an hour and a half later with the shotgun and a cash box.

At the hearing on aggravation and mitigation, a jail employee who had been guarding Carpenter at the jail hospital testified that, before he was arrested on the robbery charge, Carpenter had escaped from custody. The prosecutor also called a woman who testified that Carpenter shot her after attempting to rape and rob her.

There was no evidence that there were pending escape charges. And, the prosecution dropped attempt robbery and attempt rape charges after Carpenter was sentenced to 30 years' imprisonment.

OPINION

Stovall contends that his warrantless arrest was not based on probable cause because it allegedly was based solely on uncorroborated information supplied by an informant whose reliability had not been established. (Officer Glynn testified that he recognized Carpenter and arrested him because of the outstanding escape warrant. Thus, Carpenter does not challenge the validity of his arrest.)

Courts have consistently ruled that an informant's statement can be considered reliable when it constitutes an admission against the informant's penal interest. (1 W. La Fave, Search and Seizure §3.3(c), at 523 (1978); see, *e.g.*, *People v. McKee* (1968), 39 Ill. 2d 265, 235 N.E.2d 625.) "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *United States v. Harris* (1971), 403 U.S. 573, 583, 29 L. Ed. 2d 723, 734, 91 S. Ct. 2075, 2082.

Although there is some question about whether an admission against penal interest can be sufficient to establish reliability when the informer's identity is concealed, there is no such controversy when a participant in a crime identifies his accomplices, and the informer's identity is disclosed. (La Fave, at 526-27.)

> "[O]ne who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleys. Thus, where the circumstances fairly suggest that the informant 'well knew that any discrepancies in his story might go hard with him,' that is a reason for finding the information reliable." La Fave, at 528-29.

Not only can an admission against penal interest by an accomplice satisfy the reliability test of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, but such an admission can also satisfy the *Aguilar* requirement of showing the basis of the informant's knowledge:

> "Generally, it may be said that the surest way to satisfy the 'basis

of knowledge' prong of *Aguilar* is by a showing that the informant is passing on what is to him first-hand information. Such is the case, for example, when a participant in a crime names those who acted with him * * *." La Fave, §3.3(d), at 536.

■■ The informant in the present case, Wardlaw, eventually admitted that he had participated in the crime, and he told the police where he had just left the defendants. Wardlaw's statement came soon after the crime and was sufficient to establish probable cause that the robbers would still be in Apartment 502 when the police got there. Furthermore, when the police went to Apartment 502, they had descriptions of the robbers from three eyewitnesses. The defendants were not residents of the apartment, and Stovall does not claim standing to object to Perkin's actions in letting the police enter her apartment.

We find no basis for reversing the trial court's determination that there was probable cause for Stovall's arrest.

Stovall also argues:

(a) there was no taking from the person or presence of Danley because he locked himself in the washroom before the cash box was taken;

(b) there was no taking by force, or threat of imminent use of force, because Danley did not see the shotgun pointed at him; and

(c) the State did not prove, beyond a reasonable doubt, that a dangerous weapon was used because Danley, the only eyewitness who said he saw a weapon, could not remember the color of the gun or accurately estimate its length.

Robbery consists of taking property from the person or presence of another by force or by threatening imminent use of force. (Ill. Rev. Stat. 1979, ch. 38, par. 18—1.) Property is taken from the person or presence of a victim even though the robber first locks the victim in another room before taking property from the room where the victim was first encountered. (*People v. Braverman* (1930), 340 Ill. 525, 173 N.E. 55.) The test for "presence" in such a case is whether the victim's proximity or control over the property was so close that he could have prevented the taking if he had not been subjected to force or the threat of force by the robber. *People v. Braverman*; W. La Fave and A. Scott, Criminal Law §94, at 696 (1972).

■■ Danley testified that a man pulled out a sawed-off shotgun and yelled "Freeze m_____ f_____," but that Danley ran into the washroom and locked the door. It is insignificant whether the victim was locked in another room by the robbers, as in *Braverman*, or whether, as in this case, he escaped from the room where he encountered the defendants and locked himself in another room. The crucial fact is that each victim would

not have left the room from which property was taken except for the use of force or the threat of imminent use of force.

■■ Since Danley testified that a stranger pulled out a sawed-off shotgun and yelled, "Freeze m_____ f_____," it was within the province of the trier of fact to conclude that this constituted a threat of imminent use of force.

■■ The fact that Danley admitted that he could not remember the shotgun's color, and could not accurately estimate its length, does not mean that the prosecution's evidence is not sufficient to prove that the robbery was committed while armed with a dangerous weapon. (Ill. Rev. Stat. 1979, ch. 38, par. 18—2.) Danley's testimony that he saw a shotgun, along with the fact that a shotgun was found beneath the open window in Apartment 502, and the fact that shotgun shells were found in Carpenter's coat pocket, and the fact that Perkins testified about the presence of a shotgun, is sufficient to prove, beyond a reasonable doubt, that the defendants were armed with a dangerous weapon during the robbery.

The sole issue raised by Carpenter is that it was improper to consider evidence of other offenses as aggravating factors when determining his sentence. The principal case upon which Carpenter relies, *People v. Poll* (1979), 74 Ill. App. 3d 534, 393 N.E.2d 732, was reversed by the supreme court after his brief was filed. (*People v. Poll* (1980), 81 Ill. 2d 286, 408 N.E.2d 212.) The supreme court held that evidence of other criminal offenses can be introduced as aggravating factors during a sentencing hearing.

As the appellate court recently explained:

> "A court is not bound by the usual rules of evidence in determining sentence, but may search anywhere within reasonable bounds for facts which tend to aggravate or mitigate the offense. * * * Testimony by witnesses with firsthand knowledge relating to other offenses or other charges pending against a defendant can properly be introduced and relied upon by the court when imposing sentence where the witnesses are subject to cross-examination." *People v. Dominique* (1980), 86 Ill. App. 3d 794, 809, 408 N.E.2d 280.

■■ Consequently, we conclude that, in this case, evidence of defendant's other offenses, given by witnesses who had firsthand knowledge of these crimes and who were subject to cross-examination, could be considered by the trial court in determining what sentence was appropriate.

For the preceding reasons, the convictions are affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.