THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES LARAMORE, Defendant-Appellant.

First District (3rd Division)   No. 84—2731

Opinion filed October 14, 1987.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Sharon Johnson Coleman, and William T. O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:[1]

A jury convicted defendant James Laramore of the July 13, 1983, murder and attempted armed robbery of A. D. Smith after trial in the circuit court of Cook County. The trial court sentenced him to an extended term of 50 years for the murder and 15 years for the armed robbery, the sentences to be served concurrently.

At trial, the only occurrence witness to testify for the State, Lela White, testified to the following: A. D. Smith was 73 years old in July 1983; she met him in 1944 and eventually became his common law wife; she and Smith had operated a candy store at 3515 South Wells in Chicago, Illinois, for 15 to 20 years; she had known defendant for about five or six years; on the morning of July 13, 1983, she let defendant into the store after he "buzzed" the store bell; defendant bought "a can of pop *** and a bag of chips"; at that time Smith was sitting on a cot behind the heater in the dining room; defendant spoke with White and Smith for about half an hour and told them he was leaving for Minnesota that weekend and was not coming back; after

---

[1]The opinion originally published in this case, *People v. Laramore* (1987), 157 Ill. App. 3d 739, filed June 30, 1987, was withdrawn by order of the court entered September 28, 1987.

defendant left the store, he came back five minutes later and buzzed the door again; when White let him in, he walked "into the dining room, into [the] living room, across the two beds," put the pistol on [her] and said, " 'Give me that money' "; she then ran out the door, heard one shot as she was running and saw defendant run out the door and down the alley next to the building.

Defendant testified to substantially different events on the morning of July 13, 1983. He maintained that after spending about five minutes in the store, he went to his van, "ate [his] skins and drank [his] pop," and then caught the Dan Ryan elevated train to downtown Chicago. He specifically denied having shot Smith.

OPINION

Defendant first contends his attempted armed robbery conviction should be reversed because the State did not prove he attempted to take any property from Smith as alleged in the indictment.

■■ ■ Defendant was indicted for attempted armed robbery in that he "attempted to take property from the person and presence of Smith by the use of force and by threatening the imminent use of force while armed with *** a gun" in violation of sections 8—4, 18—1 and 18—2 of the Criminal Code of 1961. (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4, 18—1, 18—2.) A person commits an attempt offense when, with the intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense. (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(a).) Intent to commit the specific offense of attempted armed robbery may be inferred from the acts of the accused and the surrounding circumstances. (*People v. Turner* (1984), 127 Ill. App. 3d 784, 790, 469 N.E.2d 368.) A person commits armed robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force while he carries on or about his person, or is otherwise armed with, a dangerous weapon. (Ill. Rev. Stat. 1983, ch. 38, pars. 18—1, 18—2.) However, to sustain a robbery conviction on the basis of circumstantial evidence, the evidence must be conclusive and produce a reasonable and moral certainty that the offense charged was actually committed. *People v. Ohle* (1951), 408 Ill. 238, 242, 96 N.E.2d 476.

■ The evidence was sufficient to sustain defendant's conviction for the attempted armed robbery of Smith. White testified that Smith sat on a cot in the dining room of the living quarters behind the candy store because he could not see very well and was sick with diabetes. This testimony corroborated that of Officer Principato that Smith was very old, feeble and had a hard time walking. Moreover,

she testified the living and dining rooms behind the store were "altogether [*sic*]." She further testified that when defendant returned to the store, she was sitting next to Smith and that when she opened the door for defendant he walked into the dining room, the living room, across two beds, "put" a pistol on her and said, " 'Give me that money.' " Finally, White testified that when she ran out of the building Smith was still "sitting" and that she heard a shot as she was running.

White's testimony, as circumstantial evidence, was insufficient to produce a reasonable and moral certainty that defendant attempted to rob Smith after White ran out of the building. However, it was sufficient to produce that certainty of an attempted armed robbery of Smith at the time defendant put the gun on White and demanded money from her. Specifically, White's testimony that: (1) the rooms were all together; (2) Smith was still sitting on the dining room cot when she ran away; and (3) she heard a shot while running out of the building, *i.e.*, almost immediately after defendant pulled a gun on her, established beyond a reasonable doubt that defendant attempted to rob money from White in Smith's presence. The requirement in the robbery statute that the property must be taken from the "presence" of the victim has been construed as a requirement that the victim be in such proximity to or control of the property that he could have prevented the taking if he had not been subjected to force or a threat of force by the robber. (*People v. Carpenter* (1981), 95 Ill. App. 3d 722, 726, 420 N.E.2d 640.) The evidence here thus reveals that defendant attempted to rob the money from Smith's presence as well as White's. He was therefore proved guilty of the attempted armed robbery of Smith beyond a reasonable doubt.

■ Even if the rooms behind the candy store were somehow separated and Smith was not in the same room as defendant and White when defendant put the gun on her, defendant was nonetheless guilty of the crime charged. In *People v. Kelly* (1975), 25 Ill. App. 3d 753, 324 N.E.2d 82, defendant and another entered a store armed with a shotgun. The store owner ran out when he saw the shotgun but before the robbers took or demanded anything from the store or the clerks in it. The store owner stood on the sidewalk outside the store and saw the robbers talking with a clerk. Defendant was indicted and convicted of the armed robbery of the store owner and a clerk in that he took money from their person and presence. He contended that the evidence did not support the convictions because neither the store owner nor clerk had any money taken from them. Rejecting this argument, the court stated with respect to the armed robbery of the store

owner: "[W]hen he saw the shotgun, [he] saved some of his money *** and, while he was outside, he observed defendant holding the shotgun, talking to a clerk ***. *** [T]he total proof also established the commission of the robbery in his presence. *** [T]he indictment properly charged the armed robbery of [the store owner]." 25 Ill. App. 3d 753, 760, 324 N.E.2d 82.

In *People v. Braverman* (1930), 340 Ill. 525, 173 N.E. 55, defendants announced a robbery in a store, forced the manager to open a safe and locked the store occupants in a room. Later, $371 was found missing from the store. Defendants contended there was no proof of the indictment allegation that the money was taken from the person of the store manager. Construing the statutory definition as "the *** taking of [property] from the person of another," the court noted that at common law it was unnecessary that the property taken be "in the actual or immediate presence of the owner or custodian"; rather, the requirement was that the property be in the possession or under the control of the robbery victim in such a way that violence or fear of violence was the means used to take it. (340 Ill. 525, 530-31, 173 N.E. 55.) The court stated that where the words "taking from the person of another" have been used in a robbery statute, they have received the same construction as at common law. 340 Ill. 525, 531, 173 N.E. 55.

In *People v. Carpenter* (1981), 95 Ill. App. 3d 722, 420 N.E.2d 640, which defined "presence" as used in the current version of the armed robbery statute, the court rejected a contention that there was no taking from the person or presence of a store clerk who had locked himself in a washroom when the defendants announced a robbery but before the store's cash box was taken. (95 Ill. App. 3d 722, 726-27, 420 N.E.2d 640.) Finally, in *People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289, the court rejected an argument that the evidence failed to show a taking from the person or presence of another by stating, *inter alia*: "The requirement that there be a taking 'from the person or presence' is not, however, limited to removal of the property from the victim's person or from the *immediate presence of the owner, possessor or custodian*." (Emphasis added.) 78 Ill. 2d 298, 302, 399 N.E.2d 1289.

These cases amply support defendant's conviction for the attempted armed robbery of Smith. When defendant pulled the gun on White and demanded money of her, he thereby attempted to take the money from Smith as well. That the money may not have been in Smith's immediate presence does not require a reversal. Smith, as the co-owner of the money, was in such proximity to or had such control

of it that he could have prevented its taking if not subjected to a fear of violence from defendant. Defendant was proved guilty of attempted armed robbery beyond a reasonable doubt.

■ Defendant next contends he was denied a fair trial on the charge of murdering Smith because the jury was improperly instructed on a murder count which had been nolle prossed by the State prior to trial and which had charged him with "intentionally and knowingly" killing Smith in violation of section 9—1(a)(1) of the Criminal Code of 1961. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1).) He cites *People v. Stanko* (1949), 402 Ill. 558, 84 N.E.2d 839, and *People v. McCauley* (1972), 2 Ill. App. 3d 734, 277 N.E.2d 541, in support.

We affirm defendant's conviction for murder. Section 9—1(a) of the Criminal Code of 1961 provides:

"A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual *** or knows that such acts will cause death to that individual ***; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual ***; or

(3) He is attempting or committing a forcible felony ***."
(Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a).)

Defendant was originally charged with three counts of murder, one under each subsection of section 9—1(a). The counts under subsections (a)(1) and (a)(3) were nolle prossed by the State, which left the count charging defendant with having "shot and killed A. D. Smith *** knowing that such shooting *** created a strong probability of death or great bodily harm" to him under section 9—1(a)(2). The trial court instructed the jury:

"A person commits the offense of murder when he kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm ***; or *** knows that such acts will cause death to that individual; or he knows that such acts create a strong probability of death or great bodily harm to that individual."

And:

"To sustain the charge of murder, the State must prove the following propositions: *First*: that the defendant performed the acts which caused the death of A. D. Smith and *Second*: that when the defendant did so, he intended to kill or do great bodily harm to A. D. Smith or he knew that his act would

cause the death or great bodily harm to A. D. Smith or he knew that his acts created a strong probability of death or great bodily harm to A. D. Smith."

Defendant contends he objected to the jury instruction on an "intentional and knowing" murder and raised it as a grounds for a new trial. We note, however, that he objected only to that part of the jury instruction dealing with his having acted "intentionally," not that part dealing with his having acted "knowingly," in causing death or great bodily harm to Smith. We believe defendant should also have objected to the instruction dealing with his knowledge in causing death to Smith since it encompassed the "knowing" aspect of the section 9—1(a)(1) murder count. Whether or not defendant has by that omission waived any error in the instructions, we find that none occurred in them.

The same issue was raised and decided adversely to defendant in *People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136. Rosochacki was indicted for murder in that he " 'intentionally and knowingly' " stabbed and killed the victim in violation of section 9—1(a). He alleged that the jury instruction given, which defined murder under each subsection of section 9—1(a), incorrectly defined the charge against him and left the jury no choice but to convict him of an offense not charged in the indictment. Rosochacki, like defendant here, cited *Stanko* in support. In rejecting defendant's claim the supreme court stated:

> "We think, however, that the instructions correctly informed the jury of the legal principles applicable to the facts in the case, and that there was no fatal variance between the crime charged and the instructions given. ***
>
> *** We find that the defendant *** was charged with murder and convicted of that crime, and even if a variance did exist between the type of murder charged in the indictment and the types described in the instructions, it would not vitiate the conviction unless it was of such a character as to mislead the defendant in his defense or expose him to double jeopardy. [Citations.] There is no evidence *** that the defendant was misled in his defense, nor did counsel at any time *** request additional time, allege surprise, or claim that it was impossible *** to prepare a defense to the proof ***. [Citation.]" 41 Ill. 2d 483, 491-92, 244 N.E.2d 136.

To the same effect as *Rosochacki* is *People v. Allen* (1974), 56 Ill. 2d 536, 309 N.E.2d 544, *cert. denied* (1974), 419 U.S. 865, 42 L. Ed. 2d 102, 95 S. Ct. 120, where the defendants were indicted for two

counts of murder under subsections (a)(1) and (a)(2) of section 9—1. The trial court instructed the jury on a definition of murder which included felony murder under subsection (a)(3). Defendant contended: felony murder is a distinct crime from murder as defined in subsections (a)(1) and (a)(2); since he was not charged with felony murder it was a denial of due process to instruct the jury on that crime; and, it was reversible error to instruct on a crime not charged in the indictment. In rejecting defendant's arguments the supreme court stated, after citing *Rosochacki*:

> "Under section 9—1 there is but one crime of murder, not three separate and distinct offenses as [defendant] assumes. Each of subparagraphs (1), (2) and (3) under section 9—1(a) describes the mental state of the conduct of the defendant which must accompany the acts which cause the death. If the defendant were charged with murder under subparagraph (a)(1) and acquitted, he could not again be charged and tried for the [same] murder *** under subparagraph (a)(2) or (a)(3). Thus, there is no possibility that the defendant *** could have been twice put in jeopardy. Also, the provision of our statute covering the effect of a former prosecution (Ill. Rev. Stat. 1967, ch. 38, par. 3—4) prohibits a subsequent prosecution of the defendant under such circumstances." (56 Ill. 2d 536, 543, 309 N.E.2d 544.

The court also noted, *inter alia*, that the defendant was not misled by the indictment in preparing his defense, did not allege surprise or ask for a continuance to prepare a defense to the felony murder charge. 56 Ill. 2d 536, 543, 309 N.E.2d 544.

Also relevant is *People v. Turner* (1976), 35 Ill. App. 3d 550, 342 N.E.2d 158, where the defendant was indicted for and convicted of aggravated kidnapping and intimidation. On appeal, he contended that the instructions to the jury improperly placed him on trial for those crimes under definitions different from those under which he was charged. In rejecting his claim, the court stated:

> "[T]he Criminal Code of Illinois, when it delimits various alternative elements of the crime in separate subsections, does not define separate and distinct crimes but *** only a single offense with the various subdivisions dealing with details regarding the commission of that one offense. [Citing *People v. Allen* (1974), 56 Ill. 2d 536, 309 N.E.2d 544, and *People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136.] ***

> The cases relied upon by defendant do not in any manner affect the validity of [*Allen*]. In both *** the instructions

charged the jury upon separate and additional crimes which were not at issue in the trial. [*McCauley*] involved aggravated battery upon a police officer and the instructions dealt with attempt escape and resisting arrest. In [*Stanko*], defendant was charged with attempt abortion and the erroneous instruction defined *** abortion. In situations such as existed in *Allen* and *Rosochacki* and [here], the assailed instructions are not erroneous, did not in any manner hamper defendant in presenting his defense *** and raised no possibility of the existence of double jeopardy. [Citation.] *** [T]here was evidence in the record tending to prove each [alternative] stated in both of the challenged instructions." 35 Ill. App. 3d 550, 573, 342 N.E.2d 158.

Based on *Rosochacki, Allen* and *Turner*, we find that defendant was not denied a fair trial on the murder charge. The trial court's inclusion in the jury instructions of a definition of murder under section 9—1(a)(1) corresponding to a murder count which had been nolle prossed did not cause defendant to be found guilty of one crime while charged with another. He was charged with and convicted of the same crime: murder. Moreover, he did not allege in the trial court and does not allege on appeal that the variance between the indictment and the jury instructions in any way misled or hampered him in preparing a defense to the murder charge. Nor, do we believe, could defendant have done so since his defense of alibi was in no way dependent upon the type of conduct or mental state alleged in the indictment or jury instructions. Finally, the challenged instruction did not expose defendant to double jeopardy since the conviction for murder under section 9—1(a)(2) prevents his being charged and tried again for the murder of Smith under subsections (a)(1) or (a)(3) of section 9—1. (*People v. Allen* (1974), 56 Ill. 2d 536, 309 N.E.2d 544; Ill. Rev. Stat. 1981, ch. 38, par. 3—4.) As such, we believe the trial court correctly informed the jury of the legal principles applicable to the facts in the case, the variance between the indictment and jury instructions is not fatal to defendant's conviction, and there was sufficient evidence to support a conviction under either of the instructions given. *People v. Mack* (1984), 105 Ill. 2d 103, 473 N.E.2d 880, *vacated and remanded* (1987), 479 U.S. 1094, 94 L. Ed. 2d 127, 107 S. Ct. 1266, cited by defendant, does not compel a contrary conclusion. *Mack* holds that a defendant may not be convicted of more than one count of murder where there has been only one person killed (105 Ill. 2d 103, 136-37, 473 N.E.2d 880) and is therefore irrelevant to the instant case.

Lastly, defendant contends the trial court erred in using Smith's age as a factor in sentencing him to a 50-year extended term for the

murder either because the State failed to show the accuracy or reliability of the claim that Smith was 73 years old or because section 5—5—3.2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(a)) authorizes a trial court to use the victim's age as a factor in aggravation to impose a more severe though unextended-term sentence.

■■ ■ We disagree with defendant and affirm his 50-year sentence for Smith's murder. Initially, we note that defendant failed to object to the use of Smith's age as a factor in imposing sentence at the sentencing hearing and failed to raise it as a ground for a new trial. As such, defendant has waived this issue. (*People v. Perez* (1983), 113 Ill. App. 3d 143, 151, 446 N.E.2d 1229.) Specifically, we find that defendant waived any errors in the victim impact report and the presentence report, of which the former report is a part (Ill. Rev. Stat. 1981, ch. 38, par. 1005—3—2). (*People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9.) Defendant had a copy of the presentence report prior to the sentencing hearing but failed to object to any alleged errors in it at the hearing. While it is the duty of the State to prepare a presentence report consistent with the directives of the statute, it is the defendant's duty to bring to the attention of the sentencing authority any alleged deficiency or inaccuracy in the report and any objections to the sufficiency of the report must first be presented to the trial court. (81 Ill. 2d 524, 533, 411 N.E.2d 9.) Even assuming this issue had not been waived, we find no error in the trial court's reliance on Smith's age as a factor in imposing an extended-term sentence.

■■ Defendant is correct that a trial court must determine the accuracy and reliability of all factors considered in imposing sentence, including the facts contained in a presentence report. (*People v. Meeks* (1980), 81 Ill. 2d 524, 535, 411 N.E.2d 9; *People v. Peacock* (1982), 109 Ill. App. 3d 684, 685-86, 440 N.E.2d 1260.) He is also correct that where a trial court considers incompetent and prejudicial evidence in sentencing it abuses its discretion. (*People v. Vaughn* (1978), 56 Ill. App. 3d 700, 706, 371 N.E.2d 1248.) However, we find that the trial court satisfied itself of the accuracy and reliability of the claim that Smith was 73 and did not abuse its discretion or prejudice defendant in considering this factor in setting an extended term sentence.

■■ Regarding the evidence, while defendant characterizes White's testimony as to Smith's age as an "estimate" and an "opinion," we find that it was more a statement of fact. In response to the prosecutor's question, "[I]n July of 1983, how old was A.D.?" White testified: "He was 73." Neither the question nor the answer was stated in terms of estimate or opinion but in terms of fact. Moreover,

this testimony was not impeached, rebutted or even explored on cross-examination by defendant. Even if this testimony constituted an opinion we find that the witness, a lay person who had known Smith for nearly 40 years before his death, was not required to state specific reasons and facts in support of such an opinion. The foundational requirement asserted by defendant applies only to opinions rendered by expert witnesses, as illustrated by both the defendant's cited cases. (See *People v. Brown* (1978), 57 Ill. App. 3d 528, 373 N.E.2d 459; *People v. Stamps* (1977), 52 Ill. App. 3d 320, 367 N.E.2d 543.) As the State asserts, the factors considered by a trial court in imposing sentence need not be proven beyond a reasonable doubt. (*People v. Goodman* (1983), 116 Ill. App. 3d 125, 451 N.E.2d 607.) Thus, the trial court did not err in considering the victim's age, as established during the trial, as an aggravating factor in sentencing defendant to an extended term.

■■■ Moreover, the trial court did not abuse its sentencing discretion in relying on the statements of the prosecutor and the probation officer in the victim impact and presentence reports as to Smith's age. These reports were consistent with White's testimony. Even assuming there was not a proper evidentiary basis for this testimony, the trial court could nonetheless rely on the claim that Smith was 73 at the time of the murder. In determining an appropriate sentence, a trial court is not bound to a rigid adherence to the rules of evidence but may search anywhere, within reasonable bounds, for facts tending to aggravate or mitigate the offense. *People v. Meeks* (1980), 81 Ill. 2d 524, 535, 411 N.E.2d 9.

■■■ We also reject defendant's contention that, because Smith's age could have been used as a factor in setting an unextended-term sentence, it should have been used to do so and that the court erred in using the same factor to impose an extended-term sentence. A similar argument has already been decided against defendant. In *People v. Cartalino* (1982), 111 Ill. App. 3d 578, 444 N.E.2d 662, defendant claimed that the Unified Code of Corrections contained no basis for distinguishing between those defendants qualifying for an extended term under sections 5—8—2(a)(1) and 5—5—3.2(b)(2) and those who were to be imprisoned for natural life under section 5—8—1(a)(1) because both the extended-term and natural life provisions allow the trial court to consider the fact that a murder "was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" in imposing sentence (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—8—2(a)(1), 1005—5—3.2(b)(2), 1005—8—1(a)(1)). (*People v. Cartalino* (1982), 111 Ill. App. 3d 578, 591, 444 N.E.2d 662.) Defendant argued

that the totally unbridled discretion which a trial court has to sentence a defendant convicted of murder to natural life rather than an extended term based on the identical finding of brutality and heinousness denied him the equal protection of the laws. In rejecting this claim the court stated:

"Section 5—8—1(a)(1) *** does not permit the court to impose a sentence of natural life solely on the basis of the seriousness of the offense *** [citation] without regard to a defendant's rehabilitative potential. [Citation.] In determining a proper sentence for any felony *** factors in aggravation and mitigation must be considered [citations] 'as well as any other such factors as the judge shall set forth on the record that are consistent with the purposes and principles of sentencing set out in the Code.' [Citations.] ***

Cartalino's argument ignores the aggravating and mitigating factors—as distinct from a finding of brutal conduct—which the Code mandates a circuit court to weigh before imposing any sentence, including one for natural life or an extended term. It is the presence or absence of the specified statutory factors which determine the nature of the sentence imposed on a defendant found guilty of a brutal and heinous murder. It cannot be concluded *** that a circuit court has the totally unbridled discretion to sentence a defendant to natural life or to an extended term." 111 Ill. App. 3d 578, 591-92, 444 N.E.2d 662.

Similarly here, it cannot be concluded from the mere availability of the victim's age as a factor in imposing either an extended or unextended term that, as defendant argues, two sentencing schemes are thereby created, entitling him to the more favorable one, or that a trial court "lacks clear guidance" as to how to use the victim's age in imposing sentence. Rather, the victim's age is but one factor, along with other aggravating or mitigating factors which may or may not be present in each case, which the trial court must take into consideration in determining whether to impose an extended- or unextended-term sentence under the relevant statutory provisions. As such, we find that the trial court did not abuse its discretion in sentencing defendant to an extended term of 50 years under sections 5—5—3.2(b) and 5—8—2 (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—5—3.2, 1005—8—2) rather than an unextended term under sections 5—5—3.2(a) and 5—8—1 (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—5—3.2(a), 1005—8—1). Absent an abuse of discretion, the sentence of a trial court may not be altered upon review. (*People v. Clark* (1981), 102 Ill.

App. 3d 414, 424, 429 N.E.2d 1255.) Moreover, while we disagree with the State that the trial court based its imposition of an extended term on a finding that the murder was brutal and heinous, we do agree that a finding of one statutory aggravating factor is sufficient to justify an extended-term sentence. *People v. Hamilton* (1980), 81 Ill. App. 3d 297, 302, 401 N.E.2d 318.

The judgment of conviction entered and sentence imposed by the circuit court of Cook County are affirmed.

Affirmed.

McNAMARA, P.J., and RIZZI, J., concur.